UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| WORKERS UNITED, TRUSTEE ERIC MOORE | Plaintiffs |
| v. | Civil Action No. 3:24-cv-00477 |
| LOCAL 181 WORKERS UNITED, ROBERTA SHOLLER | Defendants |

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Plaintiff Workers United moves for a Preliminary Injunction to enforce their emergency trusteeship over Local 181. [DE 2]. Defendants Local 181 and President Roberta Sholler ("Sholler") responded [DE 26] and Workers United replied. [DE 33]. Workers United then filed a supplemental brief [DE 27] and Local 181 filed a sur reply. [DE 37]. The motion was discussed at a hearing on September 9, 2024. [DE 29; DE 30]. The matter is now ripe. For the reasons below, Worker's United's Motion for a Preliminary Injunction [DE 2] is **DENIED.**

## I.    STANDARD OF REVIEW

A preliminary injunction under Fed. R. Civ. P. 65 "should be granted only if the movant carries his or her burden." *Overstreet v. Lexington–Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). However, the moving party "is not required to prove his case in full at a preliminary injunction hearing." *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981). In the Sixth Circuit,

> [f]our factors guide the decision to grant a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction."

1

*S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co*., 860 F.3d 844, 849 (6th Cir. 2017) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012)). These factors are not "prerequisites that must be met," but instead, "interrelated considerations that must be balanced together." *Ne. Ohio Coal. for Homeless and Serv. Emps. Intern. Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *see also Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). For example, "a finding that the movant has not established a strong probability of success on the merits will not preclude a court from exercising its discretion to issue a preliminary injunction if the movant has, at minimum, shown serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399–400 (6th Cir. 1997) (internal quotations and brackets omitted). Still, some showing of irreparable harm is required—otherwise preliminary injunctive relief would not be necessary. *See D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019). However, the amount of irreparable harm the plaintiffs must prove is inversely proportional to the probability of success on the merits they are able to demonstrate. *Tennessee v. Cardona*, 737 F. Supp. 3d 510, 528 (E.D. Ky. 2024) (citing *Blackwell*, 467 F.3d at 1009).

Under Rule 52(a)(2) of the Federal Rules of Civil Procedure, "[i]n granting or refusing an interlocutory injunction," the Court must "state the findings and conclusions that support its action" as it does when ruling on a bench trial. Fed.R.Civ.P. 52(a)(2); *see also* Fed.R.Civ.P. 52(a)(1). Such findings must generally "reveal the logic behind the trial court's decision," and they must "enable an appellate court to conduct a meaningful review of the trial court's order." *United States v. Vance,* 956 F.3d 846, 852 (6th Cir. 2020) (citing *Grover Hill Grain Co. v. Baughman–Oster, Inc*., 728 F.2d 784, 792–93 (6th Cir. 1984)) ("The findings should be explicit so as to give

the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the grounds on which the trial court reached its decision."). However, this Court need not "make factual findings directly addressing each issue that a litigant raises." *Id*. (citing *In re Fordu*, 201 F.3d 693, 710 (6th Cir. 1999) (The Sixth Circuit has "not interpreted [Rule] 52 to require trial courts to explicitly treat each issue raised.")); *see also Grover Hill Grain Co*., 728 F.2d at 792 ("It is not necessary for the District Court Judge to prepare elaborate findings on every possible issue raised at trial."). Instead, the Sixth Circuit requires that "findings are to be liberally construed in support of a judgment, even if the findings are not as explicit or detailed as might be desired." *In re Fordu*, 201 F.3d at 710.

## II.    FINDINGS OF FACT

Local 181 serves as the certified bargaining representative for hospitality employees at Churchill Downs in Louisville, Kentucky. [DE 26 at 511; DE 26-1 at 535]. Workers United is a labor union that charters regional joint boards throughout the country representing affiliated local unions. [DE 1 at 2]. Local 181 first affiliated with a national labor union on December 14, 1959, when it chartered with the Hotel & Restaurant Employees & Bartenders International Union, AFL-CIO. [DE 26 at 512; DE 26-2 at 571]. The Hotel & Restaurant Employees & Bartenders International Union later changed its name to the Hotel Employees and Restaurant Employees International Union ("HERE"), before merging with the Union of Needle Trades, Industrial, and Textile Employees ("UNITE") in 2004 to form UNITE HERE. [DE 26 at 512].

On April 3, 2006, Local 181 signed an affiliation agreement with the Chicago and Midwest Regional Joint Board of "UNITE HERE." [DE 26 at 512; 26-3 at 573]. Workers United was founded in 2009 when it disaffiliated from UNITE HERE. [DE 27-1 at 59; DE 26 at 513]. Workers United is a distinct union from UNITE HERE, and SEIU which both continue to represent local

unions throughout the country. [DE 32-1].  On July 26, 2010, the labor unions UNITE HERE, Workers United, and SEIU reached a settlement agreement to determine the representation of 65 bargaining units, including Local 181, located throughout the United States. [DE 27-1 at 599; DE 32-1 at 708]. The agreement purported to transfer Local 181's affiliation from UNITE HERE to Workers United in 2010. [*Id.*]. Local 181 meeting minutes from March 2, 2009, show a vote to disaffiliate with UNITE HERE and remain with the Chicago and Midwest Regional Joint Board ("CMRJB") and their new international union. [DE 32-3 at 725-26].

Since 2009, Local 181 has recorded Workers United as its parent company on its annual financial disclosure reports (LM forms) filed with the United States Department of Labor. [DE 27 at 594].  Sholler and Local 181's other officers authorized these reports in the normal course of business. [DE 27-2 at 616]. On September 28, 2009, Local 181 asked that its bylaws be forwarded to President Raynor of Workers United for his approval. [DE 27 at 593; DE 23-1 at 469]. Local 181's bylaws explicitly state that they are "affiliated with the Chicago and Midwest Regional Joint Board, Workers United" [DE 27 at 593; DE 2-3 at 325]. The Local 181 maintains that it has never been affiliated with Workers United. [DE 32-1 at 706].

In August 2023, Local 181 and Levy at Churchill Downs ("Levy") entered into negotiations for a new collective bargaining agreement ("CBA"). [DE 26-1 at 514; DE 26-4 at 579]. The parties met twice and were joined by a member of the CMRJB at the second meeting when a new CBA was agreed to. [*Id.*]. After a tentative agreement was reached on August 10, 2023, the representatives of the CMRJB and Levy discussed additional changes to the agreement which were not brought to the bargaining table before the membership of Local 181 ratified the agreement. [DE 26-4 at 579]. When it came time to sign the agreement on behalf of Local 181

Sholler noticed changes that had not been ratified by Local 181 and refused to sign despite Workers United's objections. [*Id*. at 580].

In December 2023, a member of Local 181 made a motion to disaffiliate from the CMRJB which the membership passed unanimously. [*Id*. at 581]. On January 10, 2024, Sholler wrote a letter to Kathy Hanshew, manager of the CMRJB, which acknowledged a relationship between Workers United and Local 181, stating that

> Local 181 commits to continue to maintain the status quo with Workers United. That includes not withholding any of the Local 181 dues money. It also means that Local 181 will continue to share information with Workers United. Local 181 will continue to comply with Workers United and maintain business as usual.

[DE 2-2 at 188; DE 27 at 53]. On March 22, 2024, Local 181 members did not pay dues to the regional board of Workers United and instead sent them straight to Local 181. [DE 2-1 at 129]. Five days later Sholler threatened to withhold dues and induce members to stop sending their dues to the CMRJB over a preexisting dispute regarding a former CMRJB employee's laptop. [*Id*.]. In August 2024 the CMRJB representative signed a collective bargaining agreement over the objection of Local 181 membership. [DE 26-4 at 580]. The dispute between unions has caused a temporary delay in the arbitration of Levy employee Teresa Coffey who wishes to be represented by Local 181. [*Id*. at 581].

On August 15, 2024, Workers United delivered a General Executive Board Order for Emergency Temporary Trusteeship and Trusteeship Hearing, Notice of Trusteeship Charges and Trusteeship Hearing, and Notice of Emergency Temporary Trusteeship to Local 181 and Sholler. [DE 32-1 at 708]. This included a demand to "[d]eliver all funds, assets, books, records and property of any kind in their possession" to Trustee Eric Moore. [*Id*.]. Workers United asserts that the purpose of the trusteeship is correcting financial malpractice, assuring the negotiation and administration of collective bargaining agreements, restoring democratic procedures, and

otherwise carrying out the legitimate objects of the Union. [DE 1 at 1]. On August 16, 2024, Local 181 refused the trusteeship and denied trustee Moore access to Local 181 offices, threatening to call security if they trespassed. [DE 22-1 at 458]. A trusteeship hearing was held on September 5, 2024, which Local 181 did not participate in, and Workers United implemented a trusteeship. [DE 2-3 at 244; DE 27-1 at 598, 600-07].

Workers United and Trustee Moore filed a complaint seeking a preliminary and permanent injunction as well as declaratory relief under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. The action seeks to enforce a trusteeship under the Workers United Constitution and give effect to Title III of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 461 et seq. [*Id*. at 2]. A hearing was held on this matter on September 9, 2024 [DE 20; DE 30]. Both parties declined additional briefing and this matter stands submitted to the Court.

### III.    CONCLUSIONS OF LAW

Workers United asserts that their preliminary junction should be granted. Workers United claims they have a high likelihood of success on the merits as they imposed a valid trusteeship under both the LMRDA and their own constitution. [DE 2-1 at 122]. Workers United further asserts that they stand to suffer irreparable harm without a preliminary injunction, that Local 181 does not stand to suffer harm if a trusteeship is enforced, and that both public policy and the status quo favor the imposition of a trusteeship on Local 181. [DE 2-1 at 133]. Local 181 argues that Workers United cannot succeed on the merits of their preliminary injunction as the trusteeship would transfer funds in violation of the LMRDA 29 U.S.C. § 461-66, and because they are not an affiliated local union of Workers United and are not subject to the trusteeship. [DE 26 at 517-19]. Local 181 also argues that Workers United does not satisfy the required factors of a preliminary

injunction because they do not stand to suffer irreparable harm, an injunction would harm Local 181, and public policy favors the rights of the Local Union in this case. [*Id* at 519-20].

### A. Likelihood of Success on the Merits

The first factor the Court considers is whether Workers United has shown a strong likelihood of success on the merits. To establish a likelihood of success on the merits, "a plaintiff must show more than a mere possibility of success." *Six Clinics Holding Corp., II,* 119 F.3d at 402. A plaintiff must "establish a substantial likelihood or probability of success on the merits." *Int'l Dairy Foods Ass'n v. Boggs,* 622 F.3d 628, 635 (6th Cir. 2010) (quoting *Nightclubs, Inc. v. City of Paducah,* 202 F.3d 884, 888 (6th Cir .2000), overruled on other grounds by *729, Inc. v. Kenton County Fiscal Court,* 515 F.3d 485 (6th Cir. 2008)). "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Tenke,* 511 F.3d at 543 (quoting *Six Clinics Holding Corp.,* 119 F.3d at 402).

Under Title IV of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 461-66, a parent union may lawfully impose a trusteeship over a subordinate body in compliance with the union's own constitution, and for one or more of the purposes specified in the LMRDA including, "correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization." 39 U.S.C. § 462. A parent union may obtain injunctive relief to enforce a trusteeship against a subordinate local union, provided the trusteeship was ordered in compliance with the union's own constitution and was imposed for any of the four the permissible reasons listed in LMRDA Section 302. *See, e.g., Vestal v. Hoffa,* 451 F.2d 706, 708 (6th Cir. 1971). Under LMRA

Sec. 304(c), trusteeships are presumed valid for 18 months if imposed in accordance with a union's constitution and for one of the specified reasons listed in the LMRDA. 29 U.S.C. § 464(c).

> i.    *Procedural Validity and Constitutionality of Trusteeship*

In their response Local 181 did not argue that Workers United failed to satisfy the procedural or good faith requirements of trusteeship under the LMRDA, instead arguing that they were not affiliated with Workers United, and that Workers United's requested relief was unlawful. Workers United has sufficiently shown that they met the procedural requirements of trusteeship under the law and their own constitution. Workers United provided both sufficient notice and opportunity to be heard in the form of a trusteeship hearing on September 5, 2024, despite Local 181 not taking part. [DE 2-1 at 127]. The Court finds that Workers United has raised a substantial question and is likely to succeed in showing procedural validity.

Workers United also argues they meet the good faith and proper purpose requirements of the LMRDA. Once more Local 181 does not object outside of their assertion that they are not a subordinate body and thus cannot be lawfully placed in a trusteeship by Workers United. To meet these good faith and proper purpose requirements Workers United must show that they have imposed the trusteeship for one of the four permitted purposes under the LMRDA. 39 U.S.C. § 462. Under the LMRDA "legitimate objectives" in imposing a trusteeship do not include preventing the secession of its locals, unless one of the other purposes in the statute (for example, preventing disruption of collective bargaining, as in *Executive Board Local 1302 v. United Brotherhood of Carpenters & Joiners,* 477 F.2d 612 (2d Cir. 1973)) would be thwarted by the secession. *Textile Processors, Serv. Trades, Health Care, Pro. & Tech. Emps. Int'l Union v. Textile Processors, Serv. Trades, Health Care, Pro. & Tech. Emps. Int'l Union, Loc. 129,* 49 F. Supp. 2d 569, 573 (E.D. Mich. 1999). Workers United has repeatedly alleged that they have imposed a

trusteeship to "assure that the Union could perform its duties concerning negotiating and enforcing collective bargaining agreements, which is also a legitimate object of any labor organization," not to prevent Local 181's disaffiliation [DE 2-1 at 129]. Workers United has pointed to Local 181 and Sholler's refusal to sign the bargaining agreement with Levy as a significant disruption regarding their duty to negotiate and enforce bargaining agreements which they can remedy under a trusteeship. [DE 26-1 at 580]. Although there is some concern that Workers United has imposed the trusteeship merely to prevent disaffiliation, without objection from Local 181 this is sufficient at this stage to support preliminary injunction. The Court finds that Workers United has raised substantial questions about the proper purpose and good faith of the trusteeship they have attempted to impose on Local 181, although narrowly in light of potential concerns of efforts to prevent disaffiliation.

ii.     *Local 181's Status as a Subordinate Body*

Local 181 argues that the trusteeship Workers United seeks to impose is invalid because Local 181 is not a subordinate body of Workers United. Local 181 asserts that they signed a 2006 affiliation agreement with the CMRJB, not Workers United who did not exist at the time of the agreement and was never referenced in their affiliation agreement. [DE 26-3 at 573-77]. Local 181 further asserts that there is no binding written contract between Local 181 and Workers United that memorializes an agreement to affiliate between the parties and as such it must fail. However, the disputed affiliation agreement between Local 181 and Workers United is memorialized in writing in Local 181's bylaws. [DE 26-1 at 513]. Local 181's bylaws make repeated reference to an affiliation with Workers United including,

> This is the Constitution and By-laws of Local 181, Workers United a/w SEIU, Louisville, Kentucky ("Local") affiliated with the Chicago and Midwest Regional Joint Board, Workers United ("Joint Board").

> Article 3: Membership Meetings Section 1: The Local's membership shall be its supreme governing body whose decisions shall be final unless contrary to a Joint Board decision or any Workers United or Joint Board constitutional provision, or reversed on appeal as provided by the Workers United or Joint Board Constitutions.
>
> Article 6, Section 3: The Executive Board shall have power, subject to the approval of Local and the provisions of the Workers United and Joint Board Constitutions, to invest the funds and properties of Local; to authorize Local's expenditures or the use of Local's property.

[DE 27-1 at 606-07]. Furthermore, Workers United provides a sufficient written record of Local 181's ongoing affiliation since 2009. Local 181 meeting minutes from March 2, 2009, show a vote to disaffiliate with UNITE HERE and remain with the CMRJB and their new international union. [DE 32-3 at 725-26]. More recently, the letter written by Sholler to Workers United provides a written and signed document that shows the relationship between Workers United and Local 181, which Local 181 had operated under since 2009. [DE 2-2 at 188; DE 27 at 53]. Local 181 makes numerous comments and objections regarding the invalidity of these bylaws and other agreements based on them being written or altered by a CMRJB employee "unlawfully occupying an officer's position." [DE 37 at 884]. However, Local 181 neither explains these statements to the court, nor do they point to any facts or law that support this argument. As such the court cannot rely on these statements when determining Local 181's affiliation with Workers United.

Additionally, the Kentucky state law defense raised by Local 181 does not apply to the interpretation of a federal collective bargaining agreement. Federal law "is the exclusive law used to interpret the duties and obligations contained within collective bargaining agreements" and "any state law claim that is not independent of rights established by an agreement, and that is 'inextricably intertwined' with a determination of the meaning of the terms of an agreement, is preempted." *Nw. Ohio Administrators, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1030 (6th Cir. 2001) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985); *see also Dougherty v.*

*Parsec, Inc.*, 824 F.2d 1477, 1478-79 (6th Cir. 1987) (The claim cannot stand as it touches on the collective bargaining agreement which is "exclusively to be interpreted under federal law.").[1] The interpretation and validity of labor agreements, collective bargaining, and union affiliation alike, are determined by federal law, not state.

The Court finds that Workers United has presented a substantial question regarding Local 181's affiliation as a subordinate body.

      *iii.*     *Transfer of Funds Under 29 U.S.C. § 463*

Local 181 argues that 29 U.S.C. § 463 prohibits the transfer of Local 181's assets and funds to trustee Eric Moore. Section 303 of the LMRDA states that,

> [d]uring any period when a subordinate body of a labor organization is in trusteeship, it shall be unlawful. . . to transfer to such organization any current receipts or other funds of the subordinate body except the normal per capital tax and assessments payable by subordinate bodies not in trusteeship

29 U.S.C. § 463(a). Looking to the text of the LMRDA, Workers United's requested relief is lawful as the requested relief does not transfer funds from a subordinate body to the labor organization, it specifically transfers any assets and funds directly to the trustee. [DE 1 at 15]. This is fundamentally different from transferring the funds directly to the parent organization as trustees hold the funds for the benefit of the subordinate body operate. *Campbell v. Int'l Bhd. of Teamsters*, 69 F.Supp.2d 380, 385 (E.D.N.Y. 1999) ("A trustee assumes the duties of the local union officer he replaces and is obligated to carry out the interests of the local union and not the appointing entity."); see also *Burnick v. Office & Prof. Employees Int'l. Union*, No. 14-cv-1173, 2015 U.S. Dist. LEXIS 54715, *11 (E.D. WI. April 27, 2015) (when the trustee receives the assets, he or she

---

[1] Local 181 cites to *Cent. Jersey Constr. Equip. Sales, LLC v. LBX Co.*, to support their contention that state statute of fraud laws apply to federal labor contracts. No. 5:21-CV-203-REW, (E.D. Ky. June 15, 2022), aff'd, No. 22-5581, (6th Cir. 2023). However, *LBX Co*. involves state law claims in federal court on diversity jurisdiction and does not involve federal labor law claims.

must hold them in trust for the benefit of the suspended local and manage and expend them only for such purposes as are necessary to conduct the business of the suspended local."). Local 181 acknowledges this in their reply, quoting from Department of Labor Standards that state, "a trustee's role is to "mak[e] sure that [the] union's funds and other assets are properly accounted for and used solely for the benefit of [the] union and its members." [DE 38 at 931]. Transferring property to a trustee that works for the benefit of the local union is not the same as transferring funds to a parent labor organization, and the LMRDA only prohibits the later.

Workers United also argues that the remainder of section 303 of the LMRDA contemplates trustees taking control over the assets of a subordinate organization for two reasons. First, section 301 of the LMRDA requires that a trustee file "a full and complete account of the financial condition of the subordinate organization as of the time trusteeship was assumed over it" with the Department of Labor. 29 U.S.C. § 461(a); [DE 35 at 874]. According to Workers United they would be unable to meet this federal reporting requirement without access to Local 181's assets. [*Id*.]. Second, Workers United argues that "one of the proper purposes of a trusteeship under the LMRDA is to correct corruption or financial malpractice" which requires access to Local 181's accounts. 29 U.S.C. § 462.  See, e.g., *Tile, Marble, etc. v. Tile, Marble, etc. Local 32*, 1989 U.S. Dist. LEXIS 2402 (E.D Pa. 1989) (injunctive relief to prevent dissipation of local union assets); *Int'l Brotherhood of Boilermakers v. Local Lodge* D238, 678 F. Supp. 1575, 1583 (M.D Ga. 1988) (granting preliminary injunctive relief enforcing a trusteeship, noting that preservation of the local union's records, funds and assets was necessary to prevent irreparable harm). Furthermore, numerous trusteeships have been imposed without challenge that require the transfer of assets to a trustee without being invalidated based on the transfer. *Davis v. McGee*, No. 96 C 1204, 1996 U.S. Dist. LEXIS 7252, at *7 (N.D. Ill. May 22, 1996) (upon the termination of the trusteeship "the

trustee shall return all remaining funds, property, books and papers to the appropriate officers of the Local").

Local 181 argues that the LMRDA does not contemplate transfer of assets as neither reporting requirements nor corrective actions require the transfer of assets to complete. [DE 38 at 933]. They further contend that the Department of Labor's guide for trustees never calls for the trustee to take control of a local union's assets. [*Id*.]. As discussed, a trustee works for the benefit of the local union and holding assets in trust for a local union can help in satisfying the reporting requirements of the LMRDA and meeting goals of correcting corruption and financial malpractice. Even if the transfer of assets is not required to meet this goal, it does not appear prohibited under 29 U.S.C. § 463(a) and is in line with the objectives of a trustee under 29 U.S.C. § 461(a) and 29 U.S.C. § 462. Finally, the guide referenced by Local 181 is a guide for conducing audits, not a full guide to trusteeship and the powers of a trustee. [DE 38-3 at 949]. Once more, when looking at the text of the LMRDA and the legal purposes and goals of trusteeship, 29 U.S.C. § 463(a) does not prohibit the transfer of funds to a trustee.

### iv.    *The Existence of Local 181*

The Court has already addressed Local 181's argument that there is no entity by the name of "Workers United Local 181" in our prior denying Local 181's motion to dismiss. [DE 40]. Local 181 was properly served and the case does not warrant dismissal over a disputed name.

### v.    *Preservation of the Status Quo*

Workers United argues that Sixth Circuit caselaw favors preserving the status quo, and as such favors preliminary injunctions that preserve trusteeships. *Vestal v. Hoffa*, 1971 U.S. App. LEXIS 9198, at *2 (6th Cir. 1971) (staying a district court's order invalidating trusteeship, thereby maintaining trusteeship during appeal, reasoning that "the status quo should be maintained during

the pendency of the appeal."). "The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits." *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 848-49 (6th Cir. 2017) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981)).  When courts refer to preserving the status quo, they "refer to the relationship between the parties before the controversy arose and not to the relationship between the parties at the time the complaint was filed." *Erbsloeh Aluminum Sols., Inc. v. Mueko Mach., Inc.*, No. 1:22-cv-537, 2022 U.S. Dist. LEXIS 184448, at *5-6 (W.D. Mich. Aug. 11, 2022) quoting *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014). In *Vestal*, the trusteeship had already been implemented, and the Local Union was suing for relief to have it removed. As such, in *Vestal* the status quo was maintained by leaving the trusteeship in place. Here, the trust has not taken control from Local 181, assets have not been transferred, and Workers United is suing to enforce their trusteeship. The status quo is not preserved by affirmatively forcing the compliance of Local 181 when the pre controversy status quo between these parties did not involve a trusteeship over Local 181.

In summary, Workers United has raised substantial questions and has presented a sufficient likelihood of success on the merits on its breach of contract claims. However, granting a preliminary injunction would not preserve the status quo.  As a result, this factor only narrowly supports a preliminary injunction.

## B.  Irreparable Injury

First, Workers United argues that it will suffer an irreparable injury by being denied access to Local 181 offices. [DE 2-1 at 134]. However, Workers United does not explain what services they provide to Local 181 members that are being actively denied by being kept from the premises, or how they will be permanent. Without an explanation of what the harm suffered is beyond merely

keeping Workers United representatives off Local 181 property, the Court cannot find that this is an irreparable harm that cannot be remedied with simple money damages on a final judgment.

Second, Workers United alleges that the withholding of members' dues and fees by Local 181, as well as the expenses they continue to pay towards Local 181's rent, staff, and overhead, constitute an irreparable injury. [*Id*.]. However, a "'mere economic loss does not constitute irreparable injury,' because it is compensable by damages." *Towerco 2013, LLC v. Berlin Twp. Bd. of Trustees*, 110 F.4th 870, 889 (6th Cir. 2024) quoting *Ohio ex rel. Celebrezze v. Nuclear Regul. Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987). Although Workers United argues that the withholding of these funds carries additional burdens, they are still mere economic damages that do not qualify as an irreparable injury.[2]  Additionally, Workers United waited six months after Local 181 began withholding dues to sue for injunctive relief. [*Id*. at 135]. The period that Workers United waited to bring suit does not impact all their arguments as the trusteeship was only recently imposed, but it does help show that the harm suffered from withholding of funds is not irreparable.

Workers United's third argument, that Local 181 poses a threat to Workers United's assets, fails for similar reasons. [*Id*.]. The only assets Workers United have indicated are at risk if the trusteeship is not imposed are monetary, which by Sixth Circuit caselaw cannot constitute an irreparable injury. *Towerco 2013,* 110 F.4th at 889. Workers United cites to *Transp. Workers Union of Philadelphia, Loc. 234 v. Transp. Workers Union of Am*. to support a showing that risk to assets constitutes an irreparable injury, but this case focuses on financial records and other

---

[2] Workers United cites to *Int'l Bhd. of Boilermakers v. Local Lodge D238*, to support their argument that their economic damages should support a finding of irreparable injury. 865 F.2d 1228, 1236 (11th Cir. 1989). However, *Local Lodge D238* does not focus on the economic loss in coming to its conclusion and makes note of the potential loss of financial records and documents, which are not at issue here. Additionally, this is an Eleventh Circuit case that is non-binding on this court, and to the extent that it would permit economic loss to qualify as an irreparable injury, this is inconsistent with Sixth Circuit binding caselaw.

irreplaceable assets. 131 F. Supp. 2d 659, 669 (E.D. Pa. 2001). Workers United has not provided this Court with any evidence allowing us to find that financial records are at risk as was the case in the *Local 234* case.

Fourth, Workers United argues that Local 181 has bypassed the CMRJB business representative which will continue to cause irreparable harm to Workers United's ability to negotiate and service its collective bargaining agreements. [*Id*.]. According to Workers United, without their assistance and the assistance of the CMRJB, the quality of any collective bargaining agreement Local 181 enters will be negatively impacted, as will future contracts Workers United bargains for on behalf of other affiliated locals. [*Id*. at 136]. However, to merit a preliminary injunction, an injury "must be both certain and immediate," not "speculative or theoretical." *D.T. v. Sumner Cnty. Sch*., 942 F.3d 324, 327 (6th Cir. 2019) quoting *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). Although it is possible that Local 181 would enter into a weaker bargaining agreement without the assistance of Workers United or the CMRJB, the record doesn't allow the Court to make that determination with the level of certainty required to find an irreparable injury. Local 181 even argues the opposite, that its collective bargaining efforts were harmed by the intervention of Workers United. [DE 26 at 523]. Additionally, if there were a weaker bargaining agreement the primary harm would be felt by Local 181.  Workers United has failed to demonstrate that any harm to Workers United in other bargaining agreements is immediate or certain. If Local 181 disaffiliates its bargaining agreement would have no bearing on Workers United's ability to negotiate future contracts. As such the harm is not immediate or certain.

Fifth, Workers United argues that "Local 181 has directly interfered with, and caused the indefinite cancellation, of a July 30, 2024, proceeding before a neutral arbitrator to restore the

employment of a discharged Levy employee" which is causing an ongoing irreparable injury. [DE 2-1 at 136]. This argument fails for two reasons. First, the arbitration has been temporarily postponed until the resolution of these proceedings, not cancelled, and the delay of such a proceeding does not cause irreparable harm. [DE 26-8 at 589]. Second, the employee for whom the arbitration hearing was being held prefers the representation of Local 181, not Workers United. [DE 26-4 ay 581]. Workers United is not harmed by the delay in a proceeding held for an employee's benefit, particularly where the employee would prefer the hearing be delayed so she could be represented by Local 181.

Finally, Workers United argues that absent an injunction, members of Local 181 may be deprived effective union representation, causing irreparable harm. However, as discussed previously, to merit a preliminary injunction, an injury must be both certain and immediate, not speculative or theoretical. *Sumner Cnty. Sch.*, 942 F.3d at 327. This Court was not presented with any evidence that would allow it to make a finding that such harm had occurred or was about to occur. Workers United itself acknowledges that "*it is impossible to determine* exactly how many members may lose their enforceable contract rights" and "it *may* not be possible to reinstate those rights." (Emphasis added) [DE 2-1 at 137]. The standard for irreparable harm requires certainty and immediacy, it is not enough that some members "may" be deprived of representation, or that there is a "risk" that an indeterminate number of members lose contract rights that "may" not be possible to reinstate. Additionally, Local 181 membership voted unanimously against remaining with Workers United. [DE 26-4at 581]. It would be counter intuitive for the Court to find that a supposed harm suffered by a Local union could used against them to impose a trusteeship through a preliminary injunction. Particularly when they dispute that they would suffer such a harm at all. As such, the Court does not find a risk of irreparable harm supporting a preliminary injunction.

### C.  Harm to others

As to the third factor, harm to others, the Court must determine whether Workers United's harm absent an injunction outweighs the harm suffered by the Defendant or potential third parties if the Court were to grant the preliminary injunction. *Tenke*, 511 F.3d at 550–51. "The policy against the imposition of judicial restraints prior to an adjudication of the merits becomes more significant when there is reason to believe that the decree will be burdensome," and "the injunction usually will be refused if the balance tips in favor of defendant." *Garrett v. Am. Fed'n of State, Cnty. & Mun. Emps. AFL-CIO*, 726 F. Supp. 3d 404, 414 (E.D. Pa. 2024) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948.2 (3d ed.)).

Workers United asserts that granting their preliminary injunction causes no harm to Local 181 or any other third parties. [DE 2-1 at 138]. However, Local 181 has raised legitimate grievances with Workers United, even going so far as attempting to disaffiliate from Workers United. [DE 26-6 at 586]. Local 181 asserts that one of their employers, Levy, continues to hire employees in violation of their CBA's seniority provisions without the knowledge of Workers United's representative to Local 181. [DE 26 at 525]. Local 181 further asserts that Workers United have been less than zealous advocates of Local 181 and their membership, including advising Teresa Coffey, an almost 20-year employee with no prior disciplinary action to "accept a settlement offer that would result in termination of her employment because a customer refused to follow the employer's recently implemented no-cash policy." [DE 26 at 526].

If this preliminary injunction were granted Local 181 and their members would be losing any control they had over their chapter and its governance and would be forced into Workers United's view of conformity. They would further lose any power in attempting to address their grievances with Workers United and would be left without recourse absent extreme measures such

18

as decertifying and foregoing representation. This loss of control in light of significant dissatisfaction with Workers United is a substantial harm that would be suffered by Local 181. This factor fails to support the preliminary injunction as the potential harm to Local 181 outweighs the harm to Workers United.

### D. Public Interest

As to the fourth factor, public interest, both parties agree that the public interest is advanced "by promoting the purposes of the LMRDA." *Satink v. Hoffa,* 2005 U.S. Dist. LEXIS 17556, at *40 (N.D. Ohio E.D. 2005). [DE 2-1 at 139; DE 26 at 528]. The parties differ in what they believe constitutes "promoting the purposes of the LMRDA." According to Workers United, it is "self-evident" that the LMRDA was established to ensure unions have the right to self-governance and that "the power of an[sic] international union over subordinate bodies is exacted according to established procedure and for a set of distinct purposes." [DE 2-1 at 139]. Local 181 cites to the DOL interpretive manual, asserting that the LMRDA's purpose is "to protect employees' rights to organize, choose their own representatives, bargain collectively, and otherwise engage in concerted activities for their mutual aid or protection," and "to eliminate or prevent improper practices on the part of labor organizations, employees, labor relations consultants, and their officers and representatives." U.S. DEPARTMENT OF LABOR, OFFICE OF LABOR-MANAGEMENT STANDARDS, INTERPRETIVE MANUAL, Section 020.001, "Purposes of the Act," Sec. 2(a) and 2(b). In particular, the DOL Manual states that Title III of the LMRDA is intended "to correct abuses through enforcement measures." U.S. DEPARTMENT OF LABOR, OFFICE OF LABOR-MANAGEMENT STANDARDS, INTERPRETIVE MANUAL, "Trusteeship," Section 300.003, Historical Note.

The Court in *Satink* held that the public interest is served when promoting the "right of the local unions to be self-governed" and the "right of individual union members to choose[sic] to

work" in their order granting a preliminary injunction to remove a local union from trusteeship. *Satink v. Hoffa*, No. 04CV2019, 2005 WL 2007250, at *12 (N.D. Ohio Aug. 22, 2005). Between the DOL manual and the ruling in *Satink*, this Court finds that the public interest is served when protecting the rights of self-determination and employee choice in collective bargaining, as well as the rights of local unions. Allowing Workers United to "bring locals back into conformity" [DE 693] under these circumstances is inconsistent with preserving the rights of self-governance and the rights of local union members. Local 181 and its members have expressed genuine grievances regarding its representation and their most recent round of collective bargaining. [DE 26-4 at 583]. As a result, Local 181 has taken affirmative steps towards disaffiliation. [*Id.*]. If the Court were to grant the preliminary injunction before these underlying issues were resolved in the suit while members of Local 181 explored disaffiliation and self-determination it would be violating LMRDA principles of self-governance and member choice. Granting a preliminary injunction here does not promote the purposes of the LMRDA, and therefor this preliminary injunction does not favor the public interest.

### E. Bond

Since the preliminary injunction has been denied the court need not address Workers United's proposed bond.

### IV.    CONCLUSION

Although Workers United has shown a sufficient likelihood of success on the merits to narrowly favor an injunction, based on the current record, Workers United has not shown an irreparable harm in the absence of an injunction order, that such an order would not harm others, or that the public interest is served by granting the preliminary injunction. Having thus weighed the required factors and considered the applicable law, and being otherwise sufficiently advised,

the Court **ORDERS that** Workers United's motion for preliminary injunction [DE 2] is **DENIED**. The Court will refer this matter separately to the Magistrate Judge for a Rule 16 conference and given the nature of the suit, seek an expedited scheduling order.

Rebecca Grady Jennings, District Judge
United States District Court

February 7, 2025