**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO.  3:24-CV-00477-RGJ-CHL**

**WORKERS UNITED, et al.,**                                                                 **Plaintiffs,**

**v.**

**LOCAL 181, et al.,**                                                                              **Defendants.**

**MEMORANDUM OPINION AND ORDER**

Before the Court are multiple motions. They include: (1) the Motion to Compel filed by Plaintiffs Workers United ("Workers United") and Eric Moore (collectively "Plaintiffs") (DN 69); (2) Plaintiffs' Motion to Modify Briefing Schedule (DN 73); (3) two motions to withdraw by counsel for Defendants Local 181 ("Local 181") and Roberta Sholler ("Sholler") (collectively "Defendants") (DNs 85, 88); (4) a Motion for Leave to File a Surreply (DN 91) filed by new counsel for Defendants; and (5) a Motion to Continue Trial and Extend Discovery and Pretrial Deadlines filed by new counsel for Defendants (DN 92).  Responses and replies have been filed as to the pending discovery motion (DN 69) and Defendants' Motion to Continue (DN 92).  (DNs 74, 87, 93, 94.)  No responses were filed to the pending motions to withdraw (DNs 85, 88) or to Plaintiffs' Motion to Modify Briefing Schedule (DN 73), and the time to do so has expired.  While the time for Plaintiffs to respond to Defendants' Motion for Leave to File a Surreply (DN 91) has not yet expired, the Court concludes no response is necessary to resolve the instant issues before the Court.  Therefore, all these matters are ripe for review and will be resolved herein.

**I.     BACKGROUND**

This action involves alleged violations of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Labor Management Report and Disclosure Act ("LMRDA"),

29 U.S.C. § 461 *et seq.*. (DNs 57, 60.) Workers United, a national labor union, alleged that Local 181, a local union serving as the certified bargaining representative for hospitality workers at Churchill Downs, unlawfully refused to recognize and adhere to a trusteeship imposed by Workers United and unlawfully attempted to withdraw from the national union. (DN 57.) Local 181 and its President, Sholler, made claims of their own against Plaintiffs regarding an unlawful dues increase, unlawful trusteeship, unlawful transfer of funds, and unlawful appointment of officers. (DN 60.)

On February 12, 2025, the Court directed the Parties to confer and submit a proposed expedited discovery plan. (DN 43.) The Parties conducted their Rule 26(f) conference on March 5, 2025, (DN 52), and on March 25, 2025, the Court entered a scheduling order giving the Parties through July 17, 2025, to complete fact discovery (DN 53). That deadline was subsequently extended to August 16, 2025, and ultimately, to September 18, 2025. (DNs 63, 72.)

On April 7, 2025, the Parties exchanged initial disclosures. (DN 69, at PageID # 1419; DN 69-2.) In their disclosures, Defendants identified seven categories of documents pursuant to Rule 26(a)(1)(A)(ii) that they "may use to support [their] claims or defenses," including bank statements; executive board meeting minutes; general membership meeting minutes; special meeting minutes; dues checkoff remittance reports; work permit fee remittance reports; and

> [e]mails between Local 181 officers and or executive board members regarding Workers United's handling of Local 181's membership dues and fees in and since 2009, Plaintiffs' dues increases, Local 181 Bylaws, and or violations of Plaintiff Workers United's Constitution and Bylaws as well as information regarding Defendants' claim for damages.

(DN 69-2, at PageID # 1439.)

On April 21, Plaintiffs propounded written discovery upon Defendants. (DN 69, at PageID # 1419.) Defendants provided initial responses on May 21, 2025. (*Id.*; DN 69-3.) On May 30,

2

2025, Plaintiffs notified Defendants via letter that they believed Defendants' responses were deficient in several respects, including that Defendants asserted stock/boilerplate objections and Defendants failed to specifically identify which documents were responsive to particular requests.[1] (DN 69, at PageID # 1419; DN 69-4.)  Plaintiffs also objected to Defendants listing some responsive documents as being available for inspection instead of Defendants producing a copy of them.  (DN 69-4.)  Defendants initially agreed to supplement their responses but there was some disagreement between the Parties regarding what would be supplemented and by when.  (DN 69, at PageID # 1420; DN 69-5; DN 69-6.)  Plaintiffs ultimately requested a telephonic conference with the undersigned as required by the Court's Scheduling Order.  (DN 53, at ¶ 7.)

On June 16, 2025, the Court held a telephonic conference regarding the Parties' discovery dispute.  (DNs 62, 63, 82.)  After that conference, the Court ordered Defendants to produce supplemental responses the same day as the conference that "specifically identif[ied] all documents responsive to the specific request" at issue.  (DN 63.)  The Court also ordered the Parties to continue working through their other disputes—including one regarding inspection and/or production of Defendants' logbooks—and to file a joint status report on or before June 24, 2025.  (*Id.*)  Defendants did serve supplemental responses on June 16, 2025, as directed, but their supplemental responses only addressed two responses: Request for Production Nos. 20 and 21.  (DN 69, at PageID # 1420; DN 69-7.)  However, their supplemental responses did specifically identify the responsive documents by bates number.  (DN 69-7.)

Plaintiffs inquired about whether Defendants would supplement the other responses Plaintiffs previously identified as deficient.  (DN 69, at PageID # 1421; DN 69-8.)  On June 20,

---

[1] Though Plaintiffs asserted deficiencies in both Defendants' answers to interrogatories and responses to requests for production, only the responses to requests for production are at issue in Plaintiffs' Motion to Compel.  (DN 69, at PageID # 1419-20; DN 69-4.)

2025, Defendants served additional supplemental responses to several additional requests that again did identify responsive documents by bates number. (DN 69, at PageID # 1421; DN 69-10.) Thereafter, the Parties submitted a joint status report indicating that despite the supplementations, Plaintiffs still believed Defendants' production and responses were deficient. (DN 64.)

The Court held an additional conference with the Parties on June 27, 2025. (DNs 65, 67.) As a result of that conference, the Court ordered Defendants to "complete all discovery and respond to supplemental discovery requests with responsive documents on or before July 11, 2025," including that in doing so "Defendants [we]re directed to bates stamp or mark all documents that [we]re responsive to discovery requests." (DN 67.) The Court gave Plaintiffs leave to file a discovery motion on or before July 14, 2025, if they believed Defendants' responses were still deficient. (*Id.*)

On July 1, 2025, Plaintiffs' representative went to Defendants' business to make copies of certain minutes/logbooks that Defendants' responses had indicated were available for inspection. (DN 69, at PageID # 1421; DN 69-11.) Thereafter, on July 11, 2025, Defendants produced a third set of supplemental responses. (DN 69, at PageID # 1421; DN 69-12.) But as Plaintiffs were still unsatisfied with Defendants' responses and proceeded to file their instant motion to compel. (DN 69.)

In their motion to compel, Plaintiffs requested that the Court order Defendants to fully respond to Plaintiffs' discovery requests, stay fact discovery as to Plaintiffs only to permit them to receive the requested discovery from Defendants, and order Defendants to pay Plaintiffs' fees and costs incurred "in bringing this discovery motion, including all fees incurred in the Rule 37 process." (DN 69, at PageID # 1430.) In support, Plaintiffs argued that Defendants' discovery conduct violated both their obligations under the Federal Rules and this Court's discovery orders.

4

In particular, Plaintiffs argued that Defendants' June 20 second supplementation violated the Court's directive for them to supplement by June 16. (*Id.* at 1424.) They also argued that it was improper for Defendants to have made documents available for inspection as opposed to producing copies of them to Plaintiffs. (*Id.* at 1425.) In particular as to Defendants' third supplementation, Plaintiffs argued that it was a violation of the Court's directive to Defendants to complete all supplementation by July 11, 2025, for Defendants' responses served that date to offer additional documents for inspection as opposed to immediately producing copies. (*Id.* at 1424.) Plaintiffs also noted that Defendants' third supplemental responses indicated that numerous documents had already been produced, including the e-mails referenced in Defendants' initial disclosures; Plaintiffs disagreed that any such e-mails had been produced. (*Id.* at 1423.) Plaintiffs argued that Defendants' conduct had "prejudiced Plaintiffs in the preparation and presentation of their claims and defenses." (*Id.* at 1424.)

In their response, Defendants proffered that subsequent to the filing of Plaintiffs' Motion to Compel, counsel had produced the additional documents offered for inspection in Defendants' third supplemental responses to Plaintiffs. (DN 74, at PageID # 1540-41.) Defendants indicated that their counsel had mailed the additional materials to Plaintiffs' counsel on July 18, 2025, and that Plaintiffs' counsel had confirmed they were received on July 21, 2025. (*Id.*) Based on this additional production, Defendants argued they had now produced all responsive documents and had no additional documents to produce. (*Id.*) Specifically as to the e-mails referenced by Plaintiffs, Defendants indicated that e-mails had been produced on May 21, 2025. (*Id.* at 1541.) Notably, Defendants' very short response did not include any objections to the requested discovery on any basis, including no objections based on relevance, overbreadth, or proportionality.

5

In their reply, Plaintiffs argued that Defendants' discovery violations were still ongoing. (DN 87.) They emphasized that Defendants' most recent production did not specifically identify to which requests the produced documents were responsive and also reiterated that they still did not have the e-mails identified by the Defendants in their initial disclosures. (*Id.* at 1581-83.)

While Plaintiffs' discovery motion was being briefed, Defendants' counsel filed motions to withdraw. (DNs 85, 88.) However, new counsel entered an appearance for Defendants while the motions to withdraw were pending and proceeded to seek leave to file additional briefing regarding the motion to compel and to move for an adjustment of the current schedule. (DNs 91, 92.) It is against this backdrop that the Court considers the instant motions.

## II. DISCUSSION

### A. Plaintiffs' Motion to Compel (DN 69)[2]

Plaintiffs initially requested that the Court order Defendants "to produce all records responsive to Plaintiffs' First Set of Discovery Requests," including all the documents offered for inspection in Defendants' third supplemental responses. (DN 69, at PageID # 1418.) But their primary complaint was that in Defendants' third supplemental production, they offered additional documents for inspection instead of producing copies of those documents. (*Id.*) Defendants subsequently produced those documents such that there is no need to compel their production at

---

[2] Defendants' Motion for Leave to File Surreply (DN 91) is not well taken. Whether to permit a party to file a surreply is a matter left to the trial court's discretion. *See Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (citing *Eng'g & Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010) and *Tanielian v. DaimlerChrysler Corp.*, 108 F. App'x 386, 387 (6th Cir. 2004)). "Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.' " *Id.* at 265 (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)). However, surreplies are "highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." *Liberty Legal Found. v. Nat'l Democratic Party*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) (quoting *In re Enron Corp. Secs.*, 465 F. Supp. 2d 687, 691 n.4 (S.D. Tex. 2006)). Here, the only reason offered by Defendants in support of their request was that a surreply was necessary to correct certain misstatements of fact in Plaintiffs' reply. But having reviewed the proposed surreply, it appears that new counsel is merely attempting to say additional things he wished his predecessor had said in Defendants' initial response. This is not a proper reason for the Court to permit a surreply, and as such, Defendants' motion (DN 91) will be denied.

this stage. Thus, based on Plaintiffs' reply, it appears that only three issues raised in Plaintiffs' motion and reply remain for the Court's consideration: (1) whether Defendants' most recent production sent after Plaintiffs' motion to compel sufficiently identified what documents were responsive to Plaintiffs' requests; (2) whether Defendants' have produced the emails identified in their initial disclosures; and (3) whether Defendants' discovery conduct to date justifies the imposition of sanctions. The Court will address each issue in turn.

As to the first issue, in their reply, Plaintiffs argued that Defendants' July 18 production of five boxes did not comply with either Rule 34's requirements or the Court's prior orders directing Defendants to specifically identify all documents responsive to individual requests in their supplemental responses. (DN 63, at PageID # 1408 ("[R]esponses to discovery need to specifically identify all documents responsive to the specific request."); DN 67, at PageID # 1415 ("Defendants are directed to bates stamp or mark all documents that are responsive to discovery requests.").) As this Court has previously explained, when producing documents under Fed. R. Civ. P. 34, "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i); *Dodd v. Hendrickson USA, LLC*, 349 F.R.D. 286, 299 (W.D. Ky. 2025). At issue are Defendants' responses to Plaintiffs' Request Nos. 3, 23, 37, and 38. (DN 87, at PageID # 1581.) Request No. 3 asked for all documents identified in Defendants' Initial Disclosures; Request No. 23 asked for all documents, including correspondence, related to Local 181's LM reports filed with the Department of Labor since 2009; Request No. 37 asked for all documents that supported Defendants' assertion in its counterclaim that it is owed over $2 million; and Request No. 38 requested documents not already produced supporting damages or monetary relief claimed by Defendants. (DN 69-12.) As to each of those requests, among other responses, Defendants offered

7

certain documents for inspection and provided a list of responsive documents offered for inspection bates-labeled as DEF_002052 to DEF_002058. (*Id.* at PageID # 1496, 1503, 1507.) The referenced bates-labeled document consisted of a seven-page chart listing certain "file locations," "file folders," whether the documents were "boxed for production," and with some "notes/comments" as to some of the listed items. (DN 69-14.) Defendants' counsel clarified via e-mail that if an item was listed as boxed for production on the chart, the documents in the folder had been "pulled from the Local's filing cabinets and set aside so that Plaintiffs can review and or make a copy of it." (DN 69-13.) The list itself contained over 280 file locations and folders, but only approximately 94 of them were marked as boxed for production. (DN 69-14.) It is those "boxed for production" documents that were shipped by Defendants' counsel to Plaintiffs' counsel on July 18. (DN 87, at PageID # 1582.) Though the current filings do not specifically indicate how many pages of documents are actually at issue, it does appear that Defendants' current production does not specifically articulate which documents are responsive to which requests as required by Rule 34 and the Court's prior orders. Producing documents in an unorganized "dump" while commingling key documents with unrelated material is unresponsive and improper. *See Dodd*, 349 F.R.D. at 299 (citing *Stooksbury v. Ross*, 528 F. App'x 547, 553 (6th Cir. 2013)). While on the current record, the Court cannot specifically tell the size of the dump, it will require the Defendants to be more specific and to supplement their responses to Requests No. 3, 23, 37, and 38 to specify which produced documents are responsive to which requests. Thus, Plaintiffs' motion to compel will be granted in part to that extent.

As to the second issue, in their reply, Plaintiffs contended that Defendants still have not produced the "emails between Local 181's officers and board members pertaining to Local 181's bylaws" identified in Defendants' initial disclosures. (DN 87, at PageID # 1582.) Alongside their

8

initial motion to compel, Plaintiffs' counsel had submitted an affidavit stating that he had "reviewed Defendants' entire production of documents" and had "not seen any documents in Defendants' production that could be considered 'emails between Local 181 officers and executive board members regarding Local 181 Bylaws.' " (DN 69-15, at ¶ 10.)  The Court finds this statement perplexing.  In their third supplemental response to Request No. 3 for "[a]ll documents identified in Defendants' Rule 26(a)(1) disclosures," Defendants stated,

> Emails between Local 181 officers and or executive board members regarding Workers United's handling of Local 181's membership dues and fees in and since 2009, Plaintiffs' dues increases, Local 181 Bylaws, and or violations of Plaintiff Workers United's Constitution and Bylaws as well as information regarding Defendants' claim for damages have been produced (Bates DEF_000541 to DEF_000641, DEF_000642 to DEF_000654, DEF_000655 to DEF_000973, DEF_000974 to DEF_001293, DEF_001294 to DEF_001613, and DEF_001614 to DEF_001931).

(DN 69-12, at PageID # 1496-97.)  Notwithstanding attorney Lichtman's general statement cited above, no one specifically produced the specified bates-labeled documents or provided a description of the same for the Court.  But because the documents at issue are those identified by Defendants in their own initial disclosures, the Court will take Defendants at their word that they have produced at the identified bates numbers the documents they intended to reference in their own initial disclosures.  If instead of copies of documents identified in Defendants' initial disclosures, the sufficiency of Defendants' response to an independent request by Plaintiffs for all correspondence related to Local 181's Bylaws was at issue, Plaintiffs position might make more sense.  But as it stands, only Defendants know to what emails they were referring in their initial disclosures.  If Defendants have not produced a copy of an e-mail between their officers and board members regarding their bylaws that they later attempt to rely on "to support [their] claims or defenses" within the meaning of Rule 26(a)(1)(A)(ii), Plaintiffs' remedy will lie under Fed. R. Civ.

9

P. 37(c) at that time. Thus, Plaintiffs' motion to compel will be denied as to the e-mails identified in Defendants' initial disclosures.

This leaves the final issue: sanctions. Plaintiffs requested that the Court order Defendants to pay the attorneys' fees and costs incurred by Plaintiffs in bringing their discovery motion and engaging in the Rule 37 process. (DN 69, at PageID # 1430.) Fed. R. Civ. P. 37(a)(5)(A) provides that if a motion to compel is granted or "the disclosure or requested discovery is provided after the motion was filed," the court must award the movant reasonable expenses, including attorney's fees, unless: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). If a motion to compel is granted in part and denied in part, the court "may apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Here, the Court will grant in part and deny in part Plaintiffs' motion such that the Court may apportion expenses. On balance, the Court concludes that an award of expenses is appropriate. The portion of Plaintiffs' motion on which the Court is granting relief is an issue regarding which the Court offered Defendants specific instructions on multiple occasions; yet Defendants still failed to specifically identify what documents were responsive to which requests in their third supplemental responses. This, combined with the fact that the discovery process in this case has proceeded on a less-than-desirable track with Plaintiffs having to expend significant efforts to procure responsive documents from Defendants, convinces the Court that an award of expenses is appropriate. The Court also notes that the Plaintiffs did receive additional documents from Defendants after Plaintiffs filed their motion to compel. Under these circumstances, the Court will order Defendants to pay only the costs and fees incurred by Plaintiffs in filing their motion and

10

reply but not any costs associated with Plaintiffs' efforts to meet and confer with Defendants as Plaintiffs initially requested. The Court will set a deadline for Plaintiffs to submit supporting documentation for their request for fees as set forth below.

### B.     Motions to Withdraw (DNs 85, 88)

Attorneys Bennett P. Allen and John L. Gueltzow have moved to withdraw as counsel for Defendants. (DNs 85, 88.) Because the motions comport with LR 83.6(a), leave to withdraw will be granted. However, the motions also requested that the Court extend all deadlines in this case by sixty days to "allow time to secure new counsel." (DNs 85, 88.) But new counsel has already entered an appearance for Defendants and did so less than two weeks after the filing of the first motion to withdraw. (DNs 89, 90.) Accordingly, no additional time is necessary specifically for the purpose of Defendants obtaining new counsel, and the motions to withdraw will be denied in part as moot as to that request.

### C.     Scheduling Motions (DNs 73, 92)

This leaves only several scheduling motions for the Court's consideration. Plaintiffs requested that the Court extend the current deadline for filing *Daubert*/dispositive motions by thirty days from October 17 to November 17. (DN 73.) Defendants did not oppose this request. However, Defendants' new counsel requested that the Court extend the current schedule by ninety days and reschedule the current trial date to allow him to get up to speed and complete discovery in this matter. (DN 92.) Plaintiffs opposed the extension, arguing the Defendants should not be able to manufacture delay in this matter by obtaining new counsel. (DN 93.)

On balance, the Court finds good cause to extend the deadlines by ninety days and reset the trial date as requested by Defendants' new counsel. While the Court understands Plaintiffs' frustration given the difficulties that Plaintiffs have encountered in discovery, this is not a case

11

where it appears that Defendants retained new counsel as a delay tactic. This is also not a case where no efforts were made to meet the original case management order's requirements prior to requesting an extension. Both Parties served written discovery and have spent several months conferring regarding the sufficiency of Defendants' discovery responses. The Court sees no prejudice worked upon Plaintiffs by permitting a ninety-day extension to allow Defendants' new counsel to get up to speed and prepare the matter for a trial on the merits. Thus, the Court will grant Defendants' motion for extension and set new deadlines below. This ruling makes Plaintiffs' Motion to Modify (DN 73) moot to a certain extent. However, given Plaintiffs' concerns about the likely complexity of dispositive motion practice in this matter, the Court will enlarge the current interval between the discovery and *Daubert*/dispositive motion deadline as set forth below.

In setting the schedule below, the Parties are cautioned that in view of both the age and factual basis of this case, as well as the Court's desire to resolve this matter on an expedited schedule, further extensions of this schedule are *highly unlikely* and future requests for an extension will be *closely scrutinized*. The Court expects the Parties to proceed to resolve this matter on the schedule set forth below without any additional delays.

### III. ORDER

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

(1) Plaintiffs' Motion to Compel (DN 69) is **GRANTED IN PART and DENIED IN PART** as set forth herein.

(2) On or before **September 25, 2025**, Defendants shall supplement their responses to Plaintiffs' Request for Production Nos. 3, 23, 37, and 38 to specifically identify which of the documents they produced on July 18, 2025, are responsive to which of those requests.

12

(3) On or before **September 25, 2025**, Plaintiffs shall file supporting documentation for their attorneys' fees and costs incurred in the preparation and filing of their motion to compel (DN 69) and reply in support of the same (DN 87). The documentation shall include support for any rate requested and the reasonableness of the hours expended. Defendants may file objections to Plaintiffs' documentation on or before **October 2, 2025**.

(4) Plaintiffs' Motion to Modify Briefing Schedule (DN 73) is **GRANTED IN PART** and **DENIED IN PART** as moot.

(5) The Motions to Withdraw (DNs 85, 88) are **GRANTED IN PART** and **DENIED IN PART** as moot as set forth herein. Attorneys Bennett P. Allen and John L. Gueltzow are **WITHDRAWN** as counsel of record for Defendants.

(6) Defendants' Motion for Leave to File Surreply (DN 91) is **DENIED**.

(7) Defendants' Motion to Continue (DN 92) is **GRANTED**.

(8) The Court's March 25, 2025, Scheduling Order (DN 53) is hereby amended as follows:

    (a) The Parties shall complete all discovery on or before **December 31, 2025**.

    (b) No later than **February 16, 2026**, counsel for the parties shall file all dispositive motions and any motions objecting to the admissibility of expert witness testimony under Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). The party filing the last pleading in response to such motions shall notify the Court by email to the Court's Deputy, Ms. Andrea Morgan by email at

andrea_morgan@kywd.uscourts.gov, with copies to opposing counsel, that the motions are ripe for decision.

(c) The Pretrial Conference previously scheduled for May 19, 2026, is **RESCHEDULED** to **August 18, 2026, at 2:30 PM ET** before the trial judge at the Gene Snyder United States Courthouse. The Parties shall refer to the Court's March 25, 2025, Order (DN 53) for deadlines regarding pretrial filings.

(d) The jury trial previously scheduled for June 15, 2026, is **RESCHEDULED** to **September 21, 2026, at 9:30 AM ET** at the Gene Snyder United States Courthouse, Louisville, Kentucky. Counsel should be present in the courtroom by 9:00 a.m. The anticipated length of trial is five days. The Western District of Kentucky's plan for the qualification and random selection of jurors, General Order 2013-02, is available on the Court's website at https://www.kywd.uscourts.gov/jury-info. Pursuant to Section 5.02 of the Plan, "the names of persons assigned to individual petit jury panels, as well as the contents of their juror qualification questionnaires, may be disclosed to the parties seven days prior to the trial date unless otherwise ordered by the court."

(e) Further extensions of this schedule are *highly unlikely* and future requests for an extension will be *closely scrutinized*. The Court expects the Parties to proceed to resolve this matter on the schedule set forth below without any additional delays.

cc: Counsel of record, Jury Administrator

September 10, 2025

Colin H Lindsay, Magistrate Judge
United States District Court

14