UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| WORKERS UNITED, TRUSTEE ERIC MOORE | Plaintiffs |
| v. | Civil Action No. 3:24-cv-00477 |
| LOCAL 181 WORKERS UNITED, ROBERTA SHOLLER | Defendants |

* * * * *

**MEMORANDUM OPINION & ORDER**

Plaintiffs Workers United, affiliated with the Service Employees International Union, ("Workers United") and Eric Moore ("Moore"), as Trustee for Local 181 (collectively "Plaintiffs"), move for summary judgment in their favor against Defendants Local 181 and President Roberta Sholler ("Sholler"), individually and as President of Local 181 (collectively "Defendants"). [DE 111]. Defendants responded [DE 118] and Plaintiffs replied [DE 121]. Defendants filed a Notice of Supplemental Developments. [DE 129]. For the reasons below, Plaintiffs' Motion for Summary Judgment [DE 121] is **GRANTED** as to Counts I and III of the Amended Complaint and as to Defendants' Counterclaims. Count II of the Amended Complaint is **DISMISSED** as **MOOT**.[1]

## I. BACKGROUND

Local 181 is a local labor union located in Louisville, KY. Local 181 represents approximately 80 to 100 members employed by two employers, Levy Premium Foodservice

[1] Plaintiffs' Unopposed Motion for Leave to File Oversized Motion for Summary Judgment [DE 108] is **GRANTED**. Plaintiffs' Petition for Attorney's Fees [DE 99] shall be addressed in a separate order.

Limited Partnership d/b/a Levy at Churchill Downs ("Levy") and Eurest Dining at General Appliance Park, Louisville, KY ("Eurest"). [DE 111 at 1760].[2]

Workers United is an international labor organization affiliated with the Service Employees International Union ("SEIU"). [*Id.*]. Workers United was founded in 2009. [*Id.*]. Since its founding, Workers has chartered the Chicago & Midwest Regional Joint Board ("CMRJB"), an intermediate body of Workers United, to represent local unions in twelve states. [*Id.*]. In 2010, Workers United, SEIU, and UNITE HERE, Local 181's predecessor union, entered into a settlement agreement which "purported to transfer Local 181's affiliation from UNITE HERE to Workers United in 2010." [DE 118 at 2959]. Prior to the settlement agreement, Local 181 "vote[d] to disaffiliate with UNITE HERE and remain with CMRJB and their new international union." [*Id.*]. Since 2009, Local 181 has recorded Workers United as its parent company on its annual financial disclosure reports filed with the United States Department of Labor. Also in 2009, Local 181 amended its bylaws to state that they are "affiliated with the Chicago and Midwest Regional Joint Board, Workers United." [*Id.*].

Under the terms of Local 181's 2006 affiliation agreement with CMRJB and UNITE HERE, Local 181 began remitting "all membership dues and fees received after its affiliation . . . to the CMRJB, which assume[d] all financial responsibility for Local 181's financial obligations." [DE 111 at 1761]. And,

> since 2006, the CMRJB has paid all expenses for Local 181, including but not limited to all of Local 181's office and overhead expenses, paid staff to negotiate and administer Local 181's two labor contracts with Levy and Eurest, paid staff to assist in administering and processing membership dues and fees, paid legal representation, and the provision of all required legal, tax and U.S. Department of Labor ("DOL") filings. . . . Since its affiliation with Workers United, the CMRJB has been the recognized bargaining representative of Local 181 members and has

[2] With few exceptions as discussed herein, Local 181 does not dispute Workers United's "Statement of Facts." [*See* DE 111 at 1760–75].

> negotiated and entered into every collective bargaining agreement with Levy and Eurest as "Chicago and Midwest Regional Joint Board, an affiliate of Workers United/ SEIU, for and on behalf of Local 181 and its membership."

[*Id.* at 1761–62]. Membership dues owed to CMRJB were either collected directly by Local 181 by its members and then remitted to CMRJB, or were deducted via employee wage deductions by the employer in the form of "checkoff" dues and either temporarily paid to Local 181 to be remitted to CMRJB or directly paid to CMRJB. [*Id.* at 1766].

Beginning in 2023, the relationship between Local 181, CMRJB, and Workers United began to deteriorate. In September 2023, the CMRJB Business Representative assigned to Local 181, David Clark ("Clark"), learned that Sholler, the President of Local 181, had begun negotiating a new collective bargaining agreement ("CBA") without him. [*Id.* at 1763]. In December 2023, members of Local 181 voted to approve a motion to disaffiliate with CMRJB during a general membership meeting. [*Id.* at 1764]. CMRJB Manager Kathy Hanshew ("Hanshew") informed Sholler that under the WU Constitution, Article 7.2, a local union could not disaffiliate from a Joint Board without the approval of the Workers United General Executive Board ("GEB"). [*Id.*]. On January 10, 2024, Sholler responded that

> Local 181 commits to continue to maintain the status quo with Workers United. That includes not withholding any of the Local 181 dues money. It also means that Local 181 will continue to share information with Workers United. Local 181 will continue to comply with Workers United and maintain business as usual.

[*Id.* at 1765].

On March 15, 2024, Hanshew notified Levy that going forward Levy was to send all checkoff dues directly to CMRJB rather than Local 181. [*Id.* at 1766]. Shortly thereafter, Sholler instructed Levy to forward all checkoff dues to Local 181, not the CMRJB, but Levy refused, noting that their "CBA and legal commitments are to the [CMRJB] with which Local 181 [is]

currently affiliated." [*Id.*]. Local 181 began withholding from CMRJB all dues and fees collected directly from its members on or about March 14, 2024, which Local 181 estimated in November 2025 amounted to "over $50,000." [*Id.* at 1766–67].

On April 15, 2024, Workers United President Lynne Fox placed Local 181 under the supervision of David Melman ("Melman") pursuant to WU Constitution Article 5 Section 7. Melman and Clark attempted to finalize the new Levy CBA but were unable to secure Sholler's agreement. [*See generally id.* at 1767–1769]. On July 26, 2024, Clark met Sholler to have her sign the final agreement, but Sholler refused, claiming "Local 181 was no longer affiliated with the CMRJB, that Clark was no longer the Union representative for Local 181, and directed Clark to leave the office." [*Id.* at 1769].

Subsequently, in July 2024, Sholler notified Levy and Eurest that Local 181 was no longer affiliated with the CMRJB and that Clark was no longer to enter their facilities as a representative of Local 181. [*Id.* at 1770]. Local 181 retained new counsel, who informed CMRJB that Local 181 was "terminating whatever relationship it might have had with CMRJB." [*Id.*].

On August 15, 2024, Workers United delivered a General Executive Board Order for Emergency Temporary Trusteeship and Trusteeship Hearing, Notice of Trusteeship Charges and Trusteeship Hearing, and Notice of Emergency Temporary Trusteeship to Local 181 and Sholler. [DE 111-4 at 2097–2103 (hereinafter, the "Notice of Trusteeship")]. This included a demand to "[d]eliver all funds, assets, books, records and property of any kind in their possession" to Trustee Eric Moore. [*Id.*]. The Notice of Trusteeship contained the following seven charges against Local 181 justifying the emergency trusteeship:

> 1. Despite a clear obligation to do so, failing and refusing since February, 2024 to remit membership dues and fees to the Chicago and Midwest Regional Joint Board ("CMRJB"), which has assumed financial responsibility for maintaining Local 181 offices and providing paid staff;

> 2. Attempting to sever its affiliation from a Workers United Joint Board without approval from the General Executive Board;
> 3. Interfering with the collective bargaining relationship between Workers United/CMRJB and signatory employers by bypassing the designated CMRJB Business Representative and attempting to embroil these employers in its scheme to disaffiliate from the CMRJB and improperly confiscate membership dues and fees;
> 4. Unreasonably delaying the finalization and execution of a labor contract, which may have placed its members, Local 181, the CMRJB and Workers United in legal jeopardy;
> 5. Without notice or authorization, causing the cancellation of an arbitration hearing necessary to restore the employment of a discharged Local 181 member;
> 6. Failing and refusing to cooperate with Supervisor David Melman, whose appointment was intended to prevent matters from further deteriorating; and
> 7. Such other conduct making a trusteeship necessary for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of Workers United.

[*Id.* at 2103]. Workers United held a hearing on the emergency trusteeship on September 3, 2024, but Local 181 declined to attend, claiming "Workers United has no authority over Local 181. The Local is not a subordinate body of WU. Therefore, WU's attempt to impose a trusteeship on Local 181 is unlawful." [DE 111 at 1772].

Following the hearing, and consistent with the recommendation of the hearing officer, GEB voted to continue the trusteeship. [*Id.*]. However, Local 181 "Local 181 has at all times refused to recognize and adhere to the trusteeship," including by refusing Trustee Moore access to its offices and persisting in efforts to operate independently. [*Id.* at 1773].

Workers United and Trustee Moore initiated this action seeking a permanent injunction as well as declaratory relief under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. [DE 57]. The action seeks to enforce a trusteeship under the Workers United Constitution and give effect to Title III of Section 304 of the Labor Management Reporting and

Disclosures Act of 1959 ("LMRDA"), 29 U.S.C. § 464. [*Id.*]. Local 181 asserted five counterclaims: (Count I) "Unlawful Dues Increase"; (Count II) "Unlawful Trusteeship"; (Count III) "Unlawful Transfer of Funds"; (Count IV) "Unlawful Appointment of Officers"; and (Count V) "Breach of Workers United Constitution." [DE 60].

As relevant to Local 181's counterclaims, it is undisputed that in November 2024 CMRJB raised annual membership dues for all members of its local affiliates, including Local 181 members, effective January 2025. [DE 111 at 1774]. Local 181 has held officer elections every three years, including after 2015, and Workers United has never appointed a Local 181 officer at any time. [*Id.*]. Article 8 Section 3(c) of Workers United's Constitution provides that "Each affiliate shall hold its funds for its membership's sole benefit. No affiliate shall hold its funds for its membership's sole benefit." Article 1.2(e) defines the term "affiliate" to include a joint board. Article 7.2(b)(i) provides that "A joint board's membership shall consist of all the members of its locals." [*Id.*]. Finally, "[s]ince at least 2009, no Local 181 member has filed an internal charge with or against the CMRJB or Workers United or any officer of the CMRJB or Workers United regarding any offense, including any purported violation of the CMRJB or Workers United Constitutions." [*Id.*].

Workers United moved for summary judgment in its favor on each of the claims and counterclaims. [DE 111]. After briefing was completed, while the motion for summary judgment was pending, Defendants filed the Notice of Supplemental Developments. [DE 129]. The Notice informed the Court of recent developments regarding Local 181's officer elections. Following an internal charge filed by a Local 181 member, administrative hearing and subsequent adoption the recommendations of the Hearing Officer by the Workers United GEB, Workers United announced that elections of Local 181 officers will "be conducted by secret ballot on September 15, 2026."

[*Id.* at 4893]. The "Notice of Nominations and Election" states that the "trusteeship of Workers United Local 181 will terminate upon installation of the Officers." [DE 129-2 at 4905].[3]

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).[4] A genuine issue of material fact exists "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (discussing FED. R. CIV. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Absent such evidence from the nonmoving party in a motion for summary

[3] The Court acknowledges the Notice of Supplemental Developments for the sake of completeness. However, nothing in the Notice is material to the motion for summary judgment.

[4] This case is a bench trial. In a bench trial, a trial court must make its own findings of fact and draw its own conclusions of law. *See* FED. R. CIV. P. 52(a). The standard of review for summary judgment claims in a bench trial is the same as that applied in a standard trial.

judgment, the Court need not comb the entire record to determine if any of the available evidence could defeat summary judgment. *See In re Morris*, 260 F.3d 654, 665 (6th Cir.2001) (holding that the "trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact").

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

## III. DISCUSSION

### 1. The Trusteeship was Validly Imposed

Under LMRDA Section 302, a parent union may impose a trusteeship over a subordinate body in compliance with the union's own constitution, and for one or more of the purposes

specified in the LMRDA including, "correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization." 29 U.S.C. § 462. The Workers United Constitution authorizes the GEB to impose a trusteeship for the same reasons.

To prevail on summary judgment, a parent union must first show that the trusteeship was imposed in compliance with the procedural requirements set forth in the union's constitution and by-laws, and that the trusteeship was authorized or ratified after a full and fair hearing. *See Satink v. Hoffa*, No. 04CV2019, 2005 WL 2007250, at *14–*25 (N.D. Ohio Aug. 22, 2005). If the parent union meets its initial burden of showing procedural compliance, the trusteeship will be presumed valid so long as there is "substantial evidence which can be pointed to as justifying the decision of the union officials." *See Teamsters Local Union No. 406 v. Crane*, 848 F.2d 709, 712–713 (6th Cir.1988) (noting that courts are to give deference to the judgment of a union official who imposes a trusteeship as long as there is "substantial evidence" to support the reasons proffered in support of the trusteeship). At that point, the burden shifts to the local union to prove by clear and convincing evidence that "the trusteeship was not established in good faith" for one of the statutory purposes listed above. *Id.* at 713.

As a threshold matter, there is no dispute that Workers United adhered to the required procedures in imposing the emergency trusteeship and in extending the trusteeship after the September 3, 2024, hearing. This Court already found that "Workers United provided both sufficient notice and opportunity to be heard in the form of a trusteeship hearing on September [3], 2024, despite Local 181 not taking part." [DE 41 at 1031]. Local 181 has not disputed this finding

in opposition to the motion for summary judgment. The only question that remains is whether the trusteeship was imposed for a valid purpose.

Here, Plaintiffs have produced substantial evidence that the trusteeship was imposed for reasons identified in the Notice of Trusteeship. Regarding the first charge, Plaintiffs have shown that "[s]ince at least March 14, Local 181 has withheld from the CMRJB all membership dues and fees that it has collected directly from Local 181 members." [DE 111 at 1767]. Further, Local 181 attempted to compel at least one affiliated employer to forward the portion of union dues deducted from employee paychecks to Local 181, not CMRJB. [*See* DE 111-6 at 2338–39 (Levy declining to remit dues to Local 181 because it was contrary to direction from CMRJB)].

As to the second, third, and fourth charges, the record shows that Local 181 obstructed the collective bargaining process by attempting to disaffiliate with CMRJB without seeking permission from Workers United GEB, as required by the Workers United Constitution, and by refusing to finalize the Levy CBA. Significantly, Local 181 represented that it was unaffiliated with CMRJB at the same time collective bargaining was taking place between CMRJB (the signatory on behalf of Local 181) and Levy, the signatory employer. On July 26, 2024, while CMJRB was still in the process of finalizing the CBA with Levy, Sholler instructed Levy that "Chicago, Midwest regional joint board, CMRJB, is no longer a representative or affiliate of local 181" and that CMRJB's Business Representative, "Dave Clark has been informed that he is no longer . . . a representative of local 181." [DE 111-6 at 2340] That same day, Sholler refused to sign the Levy CBA stating that "Local 181 was no longer affiliated with the CMRJB." [DE 111 at 1769]. CMRJB executed the agreement with Levy without Local 181 on July 30, 2024. [*Id.* at 1769]. Nowhere in their response do Defendants attempt to dispute or explain Sholler's refusal to sign the Levy CBA. After the CBA was executed, counsel for Local 181 continued to represent

that Local 181 was "terminating whatever relationship it might have had with CMRJB," as well as "demand[ing] an immediate return of all dues, initiation fees and other assessments," notwithstanding what the "parent-body constitution says." [DE 111-17 at 2807].

All four charges justify a trusteeship. Local 181's failure to remit dues in violation of its obligation to CMRJB and Workers United is a form of "financial malpractice" and thus a proper purpose for trusteeship under the LMDRA. *See Int'l Bhd. of Boilermakers v. Loc. Lodge D238 of the Cement, Lime, Gypsum & Allied Workers Div. of the Int'l Bhd. of Boilermakers*, 865 F.2d 1228, 1236 (11th Cir. 1989) ("The International Union provided clear evidence that the Local Lodges and the defendant officers engaged in financial malpractice by failing to remit certain taxes to the International Union . . . . This financial malpractice constitutes a permissible purpose for imposing a trusteeship under the International Union's constitution and the LMRDA."). Ensuring that locals abide by the rules set forth in an international union's constitution is a permissible purpose for imposing a trusteeship under the LMDRA. *See Satink*, 2005 WL 2007250, at *24 ("The need to assure that these rules are followed, and to deter locals from violating them in the future is, thus, a proper purpose for authorizing imposition of a trusteeship under Section 302 of the LMRDA."). Even where the local seeks disaffiliation, a trusteeship may be properly imposed to protect a designated representative's ability to participate in the collective bargaining process. *See Argentine v. United Steelworkers of Am., AFL-CIO*, 287 F.3d 476, 482 (6th Cir. 2002) ("[T]he imposition of a trusteeship to prevent local officials from disrupting collective bargaining is a legitimate purpose under the LMRDA."); *Executive Board Local 1302 v. United Brotherhood of Carpenters and Joiners of America*, 477 F.2d 612, 614 (2nd Cir.1973) (imposing a trusteeship for the purpose of preventing a local from petitioning the NLRB for disaffiliation and separate certification as the

bargaining representative for its members carried out the "legitimate objects" of the organization within the meaning of 29 U.S.C. § 462).

The Court need not reach the remaining reasons for imposing the trusteeship asserted in the Notice of Trusteeship. "[A] single proper purpose is sufficient to justify a trusteeship even where improper purposes are alleged." *Morris v. Hoffa*, 361 F.3d 177, 188 (3d Cir. 2004). *Accord Satink*, 2005 WL 2007250, at *22 (collecting cases). Having found that Plaintiffs have satisfied their burden of production, the burden now shifts to Defendants to show a genuine dispute of material fact.

Defendants assert there are "multiple factual disputes" that preclude summary judgment, including:

> a. Whether Local 181 applied for a charter with Workers United pursuant to the Workers United Constitution.
> b. Whether Workers United's GEB voted to approve a charter by Local 181 pursuant to the Workers United Constitution.
> c. Whether Local 181 effectively disaffiliated with Workers United when Local 181 voted to disaffiliate with CMRJB.
> d. Whether Workers United's attempt to enforce a trusteeship on Local 181 is in bad faith and for reasons other than those contained in Section 302 of the LMRDA.

[DE 118 at 2969]. These alleged factual disputes pertain to two material issues—whether Local 181 is affiliated with Workers United and whether the trusteeship is presumptively valid under Section 302 of the LMRDA. The Court addresses each issue below.

*i. Whether Local 181 is Affiliated with Workers United*

This Court already considered and rejected Defendants' argument that Local 181 was never affiliated with Workers United when ruling on the Motion for Preliminary Injunction. [*See* DE 41]. Although the standard of review differs at the summary judgment stage, Defendants do not dispute the Court's findings that (1) "[o]n July 26, 2010, the labor unions UNITE HERE, Workers

United, and SEIU reached a settlement agreement to determine the representation of 65 bargaining units, including Local 181," and that this "agreement purported to transfer Local 181's affiliation from UNITE HERE to Workers United in 2010"; (2) Local 181 voted "to disaffiliate with UNITE HERE and remain with CMRJB and their new international union"; and (3) that since 2009, Local 181 has consistently represented in Department of Labor filings and its own bylaws that it is affiliated with Workers United. [*See* DE 118 at 2959].

Defendants proffer no additional evidence from discovery that supports its position that "Local 181 is not, and has never been, subject to the Workers United Constitution." [DE 118 at 2960]. Instead, Defendants point to a provision within the Workers United Constitution, which "states that an application for a charter as a local shall be made to the General Executive Board (GEB), the governing body of Workers United." [*Id.*]. And, because Workers United is unable to produce an "application for a charter made by Local 181 to the GEB," Defendants assert a genuine dispute of fact exists as to "whether Local 181 is subject to the Workers United Constitution." [*Id. See also id.* at 118 ("Workers United's argument ignores the fact that Local 181 has no written agreement with Workers United.")].

This argument is without merit. Without exception, the record overwhelmingly reflects that, since at least 2010, Local 181 has been affiliated with Workers United and is a "subordinate body" within meaning of Section 302 of the LMDRA. 29 U.S.C. § 462. Prior to the events giving rise to this litigation, Local 181 never suggested that a charter application was required or that it was unaffiliated with Workers United. [*See* DE 111 at 1772 (in response to "Notice of Trusteeship Hearing" Local 181's attorney responded "Workers United has no authority over Local 181. The Local is not a subordinate body of WU") (citing DE 111-21 at 2887)]. Indeed, the record shows that Local 181 did take affirmative steps to affiliate itself with Workers United. Local 181

submitted initial bylaws to Workers United for approval on September 28, 2009, and those bylaws, as adopted, explicitly state that Local 181 is "affiliated with the Chicago and Midwest Regional Joint Board, *Workers United*." [DE 118 at 2959 (emphasis added)]. In other words, both Local 181 and Workers United mutually assented to affiliation. Under the circumstances, Defendants have failed to produce more than a "scintilla of evidence" from which the Court could reasonably find in its favor and unwind the nearly two decades long parent-local relationship. *Anderson*, 477 U.S. at 252.

Likewise, there is no evidence from which the Court could find that "Local 181 effectively disaffiliated with Workers United when Local 181 voted to disaffiliate with CMRJB." [DE 118 at 2969]. While it is undisputed that Local 181 did attempt to disaffiliate with CMRJB, Local 181 never discussed leaving Workers United. When Workers United informed Local 181 that it could not disaffiliate with CMRJB without approval from Workers United GEB, Local 181 retracted its decision to withdraw from CMRJB and stated that it would "continue to maintain the status quo with Workers United." [DE 111-6 at 2335]. Indeed, the record evidence exclusively discusses disaffiliation with CMRJB. [*See, e.g.*, DE 111-3 (minutes of Local 181 board meeting discussing "pulling away from CMJB and aligning with SEIU," dated December 4, 2023); DE 111-1 at 1850 (Scholler stating prior to trusteeship that "Chicago Midwest regional joint board, CMRJB, is no longer a representative or affiliate of Local 181"). The only record evidence cited by Defendants establishes only that Workers United was "was aware that [Local 181] had a motion to disaffiliate from the *Chicago Midwest Joint Board*," not from Workers United. [DE 118 at 2963 (citing DE 118-2) (emphasis added)].

In contrast, as discussed above, it was not until *after* Workers United GEB voted to place Local 181 into a temporary emergency trusteeship, that Local 181 ever took the position that it

was unaffiliated with Workers United, much less a desire to disaffiliate. [*See* DE 111 at 1772 (in response to "Notice of Trusteeship Hearing" Local 181's attorney responded "Workers United has no authority over Local 181. The Local is not a subordinate body of WU") (citing DE 111-21 at 2887)]. It is no excuse that "[p]rior to March 2025, there was no procedure [in the Workers United Constitution] for Local 181 to withdraw from Workers United." [DE 118 at 2964]. The constitution provided that Local 181 obtain "the prior consent of the GEB." [DE 118-4]. Local 181 did not attempt to do so. In any event, the record shows Local 181 was unaware of the procedures to disaffiliate with CMRJB yet still attempted to do so. Defendants' argument that Local 181 would have attempted to disaffiliate with Workers United but-for the absence of a clear constitutional procedure lacks any support in the record.

Accordingly, Defendants have failed to show a genuine dispute that Local 181 is a subordinate body of Workers United and subject to the Workers United Constitution.

*ii. Whether the Trusteeship was Imposed in Bad Faith*

Summary judgment is therefore proper in this case unless Defendants can meet their burden of production to establish that the trusteeship was not established in good faith for a permissible statutory purpose. *See Petty v. Metro. Gov't of Nashville-Davidson Cnty.*, 538 F.3d 431, 438–39 (6th Cir. 2008) ("Summary judgment is appropriately entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex Corp.*, 477 U.S. at 322). In making this determination, the Court reviews Local 181's arguments subject to "the higher clear and convincing standard." *Satink*, 2005 WL 2007250, at *23. *See also Anderson*, 477 U.S. at 255 (where a party must prove its claims by clear and convincing evidence, "the clear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions").

Defendants first argue that "an email dated June 13, 2024, from Kathy Hanshew, International Vice President of Workers United, to David Melman, discussing Roy Reynolds," shows that "the trusteeship was implemented to coerce Local 181's compliance with Worker United's demands and to pressure Local 181 financially, including actions designed to threaten or jeopardize the local's solvency." [DE 118 at 2965–66]. In that email, Hanshew expressed dissatisfaction with Local 181's continued involvement with Roy Reynolds. Hanshew stated that "[i]f the Local continues to use him, they get trusteed . . . . If they try to sue in Court I think they lose plus bankrupt the local which works to our benefit anyhow." [DE 118-5 at 3057].

Yet even when viewed in the light most favorable to Defendants, this email alone does not establish that the trusteeship was established in bad faith. First, Defendants do not dispute that Hanshew recused herself during the GEB vote to place Local 181 into a temporary emergency trusteeship or the vote to continue the trusteeship. [DE 111 at 1771, 1772; DE 121 at 3074]. Hanshew's motivations for proposing a trusteeship are only material to the extent they influenced the voting members of the GEB. *Cf. Seoane-Vazquez v. Ohio State Univ.*, 577 F. App'x 418, 431 (6th Cir. 2014) (granting summary judgment on Title VII retaliation claim, despite existence of retaliatory emails, where plaintiff failed to proffer "any evidence that [the emails] altered the vote of a single faculty member" involved in alleged adverse employment decision). Second, as discussed above, the existence of one legally permissible purpose under LMRDA Section 302 is all that is required for a trusteeship to be presumed valid, "even if some other, improper, motive also may have existed." *Satink*, 2005 WL 2007250, at *22 (collecting cases). Even assuming Defendants could use Hanshew's email to impute "retaliatory and coercive" objectives to Workers United [DE 118 at 2966], Defendants have not rebutted the substantial evidence produced by Plaintiffs that support the first four charges of Notice of Trusteeship.

Likewise, Defendants' allusion to "[e]vidence show[ing] that the attempt to impose a trusteeship followed disputes between Local 181 and Workers United, specifically Local 181's desire to disaffiliate," cannot satisfy their burden. [DE 118 at 2966]. Defendants point to no evidence of Local 181's "desire to disaffiliate" prior to Workers United's decision to impose a trusteeship. Defendants' conclusory assertions do not create a genuine dispute of fact, especially in light of their higher burden of proof were this issue to proceed to trial.

Accordingly, for the foregoing reasons, Plaintiffs' Motion for Summary Judgment [DE 111] is **GRANTED** as to Counts I and III of the Amended Complaint. Count II (pled in the alternative) is **DISMISSED as MOOT**. Further, because Defendants' second counterclaim is for unlawful trusteeship under LMRDA Section 302, the Court also **GRANTS** summary judgment as to Counterclaim II of the Answer and Counterclaims.[5]

**2. Defendants' Counterclaims.**

Next, the Court addresses Defendants' remaining counterclaims.

*i. Counterclaim I*

Counterclaim I alleges that Workers United violated LMRDA Section 101(a)(3)(A), 29 U.S.C. §411(a)(3)(A), by increasing membership dues in January 2025 without a secret-ballot vote of the Local 181 membership. Defendants claim that Local 181's members "did not approve dues increase by majority vote." [DE 118 at 2967]. Plaintiffs respond that "the secret-ballot voting

---

[5] Although the Amended Complaint [DE 57] seeks permanent injunctive relief enforcing the trusteeship, the parties have only briefed the threshold issue of whether the trusteeship is valid and enforceable, and whether Local 181 is affiliated with Workers United. In the absence of such briefing, the Court declines to order permanent injunctive relief. Declaratory relief establishing the validity and enforceability of the trusteeship and the legal status of the parties is sufficient. If Local 181 refuses to adhere to the trusteeship, Plaintiffs may apply to the Court for "any ancillary relief of an equitable character that may be necessary to make the trusteeship effective." *Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, AFL-CIO v. Olympic Plating Indus., Inc.*, 870 F.2d 1085, 1088 (6th Cir. 1989) (citing *International Bhd. of Boilermakers v. Local Lodge* 714, 845 F.2d 687, 691 (7th Cir.1988)).

requirements in Section 101(a)(3)(A) allegedly violated here applies only to *local* labor organizations, not intermediate bodies such as the CMRJB or international unions such as Workers United." [DE 111 at 1789]. Rather, Section 101(a)(3)(B) applies to "[d]ues increased adopted by intermediate and international unions." [*Id.* (citing 29 U.S.C. § 411(a)(3)(B); *Corns v. Laborers Int'l Union of North America*, 709 F.3d 901, 909 (9th Cir. 2013) ("Under subsection (B), labor organizations, such as international unions, are authorized to increase dues . . . by one of several methods, including by a majority vote of delegates at a regular or special convention.")). Further, Plaintiffs argue that Local 181 has sued the wrong entity. [DE 111 at 1788]. CMRJB—not Workers United—increased Local 181 member's dues, and Workers United receives none of the dues from CMRJB. [*Id.*].

Defendants do not contest that Section 101(a)(3)(B) applies or that Workers United was responsible for increasing Local 181's dues. Even if Workers United could be liable for CMRJB's decision to increase dues, Local 181 cannot show that any violation occurred. Defendants have submitted Kathy Hanshew's declaration explaining that the dues increased was assessed "in accordance with Article 4 of the CMRJB Constitution." [DE 111-14]. Article 4 of the CMRJB Constitution, permits CMRJB to adjust the "dues structure for local unions affiliated with the Joint Board," and does not appear to violate Section 101(a)(3)(B). Defendants have submitted no evidence from which a violation could be inferred.[6] Summary judgment is **GRANTED** as to Counterclaim I.

---

[6] Workers United is correct that only Sholler has standing to bring Counterclaim I. *See United Bhd. of Carpenters & Joiners, Dresden Local No. 267 v. Ohio Carpenters Health & Welfare Fund*, 926 F.2d 550, 556 (6th Cir. 1991) (29 U.S.C. § 412 confers standing only on union member, not "local unions or other union components"). Summary judgment is appropriate against Local 181 on Counterclaim I on this basis as well.

*ii. Counterclaim III*

Counterclaim III alleges that Workers United's request for Local 181 to "[d]eliver all funds, assets . . . and property of any kind in their possession to Plaintiff Trustee Eric Moore" violates LMRDA Title III, Section 303 at 29 U.S.C. § 463. But as this Court explained in its Order dated February 7, 2025, this request "is fundamentally different from transferring the funds directly to the parent organization as trustees hold the funds for the benefit of the subordinate body operate." [DE 41 at 1034–1036]. The Court found that "when looking at the text of the LMRDA and the legal purposes and goals of trusteeship, 29 U.S.C. § 463(a) does not prohibit the transfer of funds to a trustee." [*Id.*]. Defendants fail to address this counterclaim in its response. Summary judgment is **GRANTED** as to Counterclaim III.

*i. Counterclaim IV*

As to Counterclaim IV, for unlawful appointment of officers under LMRDA Section 401(b), Defendants assert that "Local 181 has not elected a secretary treasurer or joint board delegates since Roberta Sholler was elected vice president in 2015." [DE 118 at 2968]. Yet Sholler testified that the reason Local 181 has not held elections is because its officers were sworn into office as unopposed. [DE 111-6 at 2275]. Further, Sholler was "not aware of the Joint Board appointing any officer to the Local 181 executive board in or after 2015." [*Id.*]. Defendants have submitted no evidence in support of its claim nor explained why Workers United would be liable for Local 181's failure to hold elections. Summary judgment is **GRANTED** as to Counterclaim IV.

*ii. Counterclaim V*

Finally, Counterclaim V alleges breaches of the Workers United Constitution in violation of LMRA Section 301. However, a union member must generally exhaust internal procedures

before turning to federal court. This policy is based on "deferring judicial consideration" of "disputes arising over internal union matters such as those involving the interpretation and application of a union constitution." *Holmes v. Donovan*, 984 F.2d 732, 738 (6th Cir. 1993)

Here, Defendants assert that Workers United has violated its constitution because Local 181 has not adopted their own bylaws, in violation of Article 6, Section 1 of the Workers United Constitution, and because "[s]ince at least 2009, Workers United and CMRJB has ordered Local 181 to turn over approximately $2 million of Local 181's funds in violation of Article 8, Section 3(c) of the Workers United Constitution." [DE 118 at 2968]. The parties dispute the application of these provisions. However, it is undisputed that no member of Local 181 has pursued internal remedies for the alleged violations. Defendants do not argue that its failure to exhaust should be excused or otherwise address exhaustion. Therefore, the Court finds it is appropriate to defer judicial consideration of these issues. *Holmes*, 984 F.2d at 738. Summary judgment is **GRANTED** as to Counterclaim V.

## IV. CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court ORDERS:

1. Plaintiffs' Motion for Summary Judgment [DE 111] is **GRANTED** as to Counts I and III of the Amended Complaint. Count II is **DISMISSED** as **MOOT**.
2. Defendants' Counterclaims are **DISMISSED**.
3. An appropriate judgment will be entered separately.

August 17, 2026

Rebecca Grady Jennings, District Judge
United States District Court